IN THE UNITED STATES DISTRICT COURT

FOR SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Redoak Communications, Inc. f/k/a Redoak Group, Inc., a Florida corporation, | Case No.: |
| | **CIVIL ACTION** |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | |
| William N. Olsen, d/b/a Code Red DVD, deceased; Personal Representative of the Estate of  William N. Olsen;  Walter Y. Olsen; Kino Lorber Inc., a Delaware corporation; Amazon.com Services, LLC, a Delaware limited liability company; Best Buy Co., Inc., a Minnesota corporation; Target Corporation, a Minnesota corporation;  Walmart.com, Inc., a Delaware corporation;  Grindhouse Video, LLC, a Tennessee limited liability company; Diabolik, LLC, a New Jersey limited liability company; Ronin Entertainment d/b/a Ronin Flix, a California corporation; Frolic Pictures LLC, a California limited liability company; Jared L. Masters; and DOES 1 thru 10, inclusive, | **(1) COPYRIGHT INFRINGEMENT;** **(2) CONVERSION** **[JURY TRIAL DEMANDED]** |
| Defendants. | |

Thomas R. Charboneau, Jr.-FL Bar No. 223890
SILLS, CHARBONEAU & BARNET, P.C.
1923 Hamman Drive
Troy, Michigan 48085
Phone: (248) 761.2334
Email: tcharblaw@gmail.com

*Additional Counsel Listed on Next Page*

*Attorney for Plaintiff*

Charles A. Fiedler, MI Bar No. 37886
SENTINEL LAW GROUP, P.C.
*Pro Hac Vice Motion Forthcoming*
5859 West Saginaw Highway, #210
Lansing, Michigan 48819
Phone: (517) 488.8281
Email: cfiedler@sentinellawgroup.net

*Attorney for Plaintiff*

## INTRODUCTION

1.  This is an action by Redoak Communications, Inc., a Florida corporation f/k/a Redoak Group, Inc. ("RCI") solely owned by Vlado P. Hreljanovic, a natural person ("VPH") for conversion and to recover damages arising from infringement of RCI's Copyright in "*Just Before Dawn*" a/k/a *The Last Ritual* (the "Film").

2.  The Film is  of  the slasher genre directed by Jeff Lieberman and starring Chris Lemmon, Gregg Henry, Deborah Benson, Jamie Rose, and George Kennedy. The Film follows a group of hikers who travel into the Oregon mountains to visit property inherited by one of them, only to be hunted by a ruthless backwoods' killer. The Film was shot in the Silver Falls State Park in Silverton, Oregon.

3.  The Film was planned, financed, and produced by Oakland Productions Limited, ("Oakland"), a New York corporation.

4.  Oakland was dissolved on December 24, 1991, and all right, title and interest in and to the Copyright in the Film was transferred to Juniper Releasing,

Inc. ("JRI"), a New York corporation solely owned by VPH, then from JRI to Juniper Pictures, Inc. ("JPI"), a New York corporation solely owed by VHP, and then from JPI to VPH.

5. Since the dissolution of Oakland and up until the present day, VPH has been the beneficial owner of the Film, and has held all rights in and to the Film in his own name or in the name of one of his companies, namely JRI, JPI and RCI.

6. Copyrights in the United States are issued by Register of Copyrights, Library of Congress, United States Copyright Office (the "Register of Copyrights") and made readily available for viewing by the general public.

7. VPH held the Copyright Registration for the Film, issued on October 10, 2007, by the Register of Copyrights and assigned number PA0001622311, until assignment to RCI.

8. By duly executed instrument, dated August 17, 2022, VPH assigned all right, title and interest in the Film, including the Copyright, to Plaintiff RCI (the "Assignment"). A copy of the Assignment was recorded on October 19, 2022, by the Register of Copyrights.

9. There have been authorized releases of the Film throughout the years in various media including theatrical, Pay T.V., VHS, DVD and Blu-ray. However, there has never been an authorized release of the Film in digital media, including digital download, video-on-demand and streaming. At present, there are no valid licenses and thus no authorized releases of the Film in any medium.

10. In 2004, VPH on behalf of JPI granted Media Blasters, Inc. certain rights to the Film pursuant to a License Agreement dated December 28, 2004 (the "Media Blasters License") and the Film was released on DVD by Media Blasters on their Shriek Show imprint in a 2-disc special edition (the "Media Blasters Edition"). The Media Blasters Edition features a director's commentary, as well as a documentary on the making of the Film.

11. In 2011, Media Blasters' rights to the Film expired and VPH, on behalf of RCI, granted William N. Olsen d/b/a Code Red DVD ("WNO") certain rights to the Film pursuant to a License Agreement dated August 14, 2012 (the "Code Red DVD License") and the Film was re-released on Blu-ray by Code Red DVD on November 5, 2013 (the "Code Red DVD Edition").

12. On August 14, 2018, the Code Red DVD License expired and was not renewed or extended.

13. On or about May 6, 2019, without authorization from VPH or RCI, Ronin Entertainment d/b/a Ronin Flix, through purchase of finished goods from Olsen, released a Blu-ray of the Film (the "Ronin Flix Edition") which was sold by Ronin Flix via the Internet and upon information and belief via the Code Red Site, and other websites, continuing until April, 2020. At no time did VPH or RCI enter into a license agreement with WNO or Ronin Flix for the Ronin Flix Edition.

14. Upon information and belief Kino Lorber Inc., ("Kino") acts as distributor of Code Red DVD films. On or about January 21, 2021, without

authorization from VPH or RCI, Kino through WNO, released a Blu-ray of the Film (the "Kino Edition"), which was sold through various retailers. At no time did VPH or RCI enter into a license agreement with WNO or Kino for the Kino Edition.

15.   On or about October 8, 2019, without authorization from VPH or RCI, Frolic Pictures LLC, ("Frolic Pictures") released a DVD of Film (the "Frolic Edition"), which was sold by Frolic and others. At no time did VPH or RCI enter into a license agreement with Frolic for the Frolic Edition.  The Frolic Edition was a double feature with "*Carry on Screaming*" (1966), a much less desirable title which, upon information and belief, is in the public domain. The Frolic Pictures double feature is a modification of a now illegal theatrical practice known as block booking in which major studios required theaters to buy B-movies along with more desirable A-movies; however, in this case the result is a severe dilution of the value of the Film in the marketplace.

## **THE PARTIES**

16.     Plaintiff, RCI is, and at all times mentioned herein is, formed under the laws of the State of Florida with its principal place of business in the State of Florida and in this judicial district.

17. Defendant Estate of William N. Olsen is the estate of Defendant William N. Olsen, a natural person ("WNO") who died on November 6, 2022, in

the City of Glendale, Los Angeles County, California and whose last known address is 4102 96th Ave SE, Mercer Island, State of Washington. That WNO directly or through its agents conducts business in the State of Florida and in this judicial district. Upon information and belief a Personal Representative or Executor over the estate of WNO has not yet been appointed.

18.   Walter Y. Olsen ("WYO") is a surviving sibling of William N. Olsen and whose last known address is 2630 77th Ave SE, Unit 512, Mercer Island, WA 98040-3397.

19.   Upon information and belief, certain materials regarding the Film are under the possession and/or control of WYO at 4102 96th Ave SE, Mercer Island, State of Washington.

20.   Upon information and belief WYO owns and operates a film production company under the name Scorpion Releasing LLC, a dissolved Washington corporation, and thus has an opportunity to further illegally exploit the Film.

21.   Defendant, Ronin Entertainment d/b/a Ronin Flix ("Ronin Flix") is, and at all times mentioned herein is, a corporation formed under the laws of the State of California with a registered office located at 1505 Corporation 2389 Business Filings Incorporated, 330 N. Brand Blvd, Suite 700, Glendale, CA 91203.

22.   Defendant Kino is, and at all times mentioned herein is a corporation formed under the laws of the State of New York with its principal place of business in the State of New York with a registered office of Cogency Global Inc., 850 New

Burton Road, Suite 101, Dover, DE 19904. That Kino directly or through its agents conducts business in the State of Florida and in this judicial district.

23.   Defendant, Amazon.com Services, LLC ("Amazon") is, and at all times mentioned herein is, a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State of Washington with a registered office of Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. That Amazon directly or through its agents conducts business in the State of Florida and in this judicial district.

24.   Defendant, Best Buy Co., Inc. ("Best Buy") is, and at all times mentioned herein is, a corporation formed under the laws of the State of Minnesota with its principal place of business in the State of Minnesota with a registered office of CT Corporation Systems, 1010 Dale Street N St. Paul, MN 55117-5603. That Best Buy directly or through its agents conducts business in the State of Florida and in this judicial district.

25.   Defendant, Target Corporation ("Target") is, and at all times mentioned herein is, a corporation formed under the laws of the State of Minnesota with its principal place of business in the State of Minnesota with a registered office of CT Corporation Systems, 1010 Dale Street N St. Paul, MN 55117-5603. That Target directly or through its agents conducts business in the State of Florida and in this judicial district.

26.   Defendant, Walmart.com, Inc. ("Walmart") is, and at all times

mentioned herein is, a corporation formed under the laws of the State of Delaware with its principal place of business in the State of Arkansas with a registered office of   The Corporation Trust Company, 1209 Orange St Wilmington, DE 19801. That Walmart directly or through its agents conducts business in the State of Florida and in this judicial district.

27.  Defendant, Grindhouse Video LLC ("Grindhouse") is, and at all times mentioned herein is, a limited liability company formed under the laws of the State of Tennessee with its principal place of business in the State of Tennessee with a registered office of Grindhouse Video LLC, 7212 Kingston Pike, Suite 102, Knoxville, TN 37919. That Grindhouse directly or through its agents conducts business in the State of Florida and in this judicial district.

28.  Defendant, Diabolik, LLC ("Diabolik") is, and at all times mentioned herein is, a corporation formed under the laws of the State of New Jersey with its principal place of business in the State of New Jersey with a registered office of Diabolik, LLC, P.O. Box 313 Mickleton, NJ 08056. That Diabolik directly or through its agents conducts business in the State of Florida and in this judicial district.

29.  Defendant, Frolic Pictures is, and at all times mentioned herein is, a limited liability company formed under the laws of the State of California with a registered office of P.O. Box 381202, Los Angeles, CA 90038 and upon reason and belief is owned and controlled by Defendant Jared L. Masters ("Masters"), a

natural person, whose last known address is P.O. Box 381202, Los Angeles, CA 90038. That Frolic Pictures and Masters directly or through their agents conducts business in the State of Florida and in this judicial district.

30.   That RCI is informed and believes, and on that basis alleges, that the true names and identities of defendants named herein as DOES 1 through 10 are unknown to RCI, and RCI alleges that each of the defendants known herein as DOES 1 through 10 were in some manner responsible for the damages suffered by RCI and RCI will amend this Complaint to show their true names, involvement, and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

31.   This is a civil action seeking damages for federal claims including direct copyright infringement and contributory copyright infringement involving the sale of goods and for state law claim of conversion. The jurisdiction of this Court over the federal claims is proper pursuant to 28 U.S.C., § 1331 (federal question) and § 1338 (copyrights).

32.   This case involves claims brought under the U.S. Copyright Act of 1986, as amended being 17 U.S.C., §§ 101 *et seq.* (the "Copyright Act"). Additionally, this Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C., § 1367 (supplemental jurisdiction).

33.   This Court has personal jurisdiction over each of the defendants under Florida's Long Arm Statute because Plaintiff RCI has its principal place of

business in the State of Florida in this judicial district, and the acts of infringement (including Internet solicitation and sales) were aimed at and occurred in the State of Florida in this judicial district by each Defendant who conducts business in this judicial district, and caused injury to Plaintiffs and infringement of its intellectual property rights in the State of Florida in this judicial district. See Fla. Stat. § 48.193. . See *Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497 (2nd Cir. 2011); *Washington Shoe Co. v. A-Z Sporting Goods Inc*., 704 F.3d 668 (9th Cir. 2012).

34. Venue in the Federal District Court for the Southern District of Florida is proper pursuant to 28 U.S.C., § 1391(b) and (c) and/or § 1400 (a).

## **BACKGROUND**

35. Technological advances have made it increasingly possible to market and sell products, including hard goods and digital files over the Internet.

36. Would-be infringers have developed many means of engaging in film piracy with the most common to simply include copyrighted works on owned and/or controlled websites for offer of sale, digital download, video-on-demand and/or streaming, all without monetary compensation to the Copyright owner.

37. These infringers many times publicly state that they respect the intellectual property rights of others, but often do not conduct due diligence on the validity of their rights to sell, download or stream the title, no doubt hoping that their websites and/or pirated material will avoid detection by the Copyright

owner. It is common industry practice to substitute warranties, representations and indemnities for due diligence.  The is just like saying that I think there could be a possibility of copyright infringement but rather than making sure I am just going to protect myself in the contract.  By doing so such person acts in reckless disregard knowing full well that there is a probability that in certain cases it is violating a copyright. It is up to the owners of the copyrighted works to constantly monitor websites at their cost and expense, to document the infringement and give a "takedown notice" to the infringer, as RCI has given to Defendants.

38.  The Copyright owner hopes that the infringer complies with the takedown notice, provides the Copyright owner an accounting and pays damages, but if not, the only alternative is to pursue legal action.

39.  Some infringers hope that by promptly complying with the "takedown notice" they will avoid any further legal action or payment of damages. This is just like stealing, getting caught and then just keeping the money and the copy of the film without payment of any compensation and at the same time not being charged with a crime. Sounds ridiculous, but this is exactly what occurs time and time again in the movie industry.

40.  The movie industry, including small independent film companies like RCI, and the entertainment industry in general, has lost and continues to lose substantial revenues due to Copyright infringement actions.

41.  There is simply no means to deter these infringers other than bringing legal action which in most cases requires the Copyright owner to hire out-of-state counsel, file a lawsuit in a court located at defendant's place of business which, for out-of-state plaintiffs involves substantial cost and expense.  To allow wrongdoers this advantage in deterring legal action flies in the face of fair-play, and substantial justice. By allowing all defendants to be brought before this court in a case which involve the same or substantially the same core of operative facts and questions of law would avoid unnecessary costs, delays, or the possibility of inconsistent verdicts, and would save judicial resources.

42.  Fortunately, certain courts have started to make it easier for owners of copyrights to seek remedies against infringers by being more concerned with the location of the plaintiff's principal place of business. The courts have further recognized that for cases that happen on the Internet, the injury caused by the infringer could not be associated with a single location associated with the infringer's principal place of business as it occurs throughout the United States and worldwide for anyone with Internet access. This is particularly the case here where there are multiple defendants located in various jurisdictions infringing on a duly registered Copyright by illegally selling an unlicensed product over the Internet.

**FACTS COMMON TO ALL CLAIMS**

43.  The Copyright notice on the Film states as follows:

-12-
COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

Copyright MCMLXXX, Oakland Productions Limited.

Music Copyright MCMLXXX,

Oakland Productions Limited and Brad Fiedel Music (ASCAP).

All rights administered by Oakland Productions Limited for the world.

44.  Since Oakland was dissolved in December 1991, and up until the present day, VPH has been the beneficial owner of the Film, and has held all rights in and to the Film in his own name or in the name of one of his companies, namely JRI, JPI and RCI.

45.  Consistent with the chain of title, the notice of Copyright on the Film, is clear and conspicuous and appears and on the packaging of the Ronin Flix Edition and Kino Edition of the Film (as described below) as follows:

1981. Juniper Pictures, Inc.

Under License from Vlado P. Hreljanovic

Copyright Registration PA0001622311

All Rights Reserved

46.  Code Red DVD is a film production and distribution company formerly of Mercer Island, State of Washington, and now believed to be based in Los Angeles County, State of California, owned by WNO. Code Red DVD markets and sells films on its web site at  https://www.coredreddvd.com (the "Code Red Site") and by use of a distribution company.  The Code Red Site is currently down and is not accepting any orders for any films.

47. Frolic is a production and distribution company based in Los Angeles

County, State of California, owned and controlled by Defendant Masters. Frolic markets and sells films on its web site at www.frolicpictures.com (the "Frolic Pictures Site") and by use of distribution company.  Upon information and belief, Frolic Picture's business model involves direct retail sales of media products from the Frolic Pictures Site and wholesale sales of media products.

48. Kino, based in New York City, is a distributor of international, documentary, independent, and classic films and operates a web site at Internet address https://www.kinolorber.com (the "Kino Site").   Upon information and belief, Kino's business model involves direct retail sales of media products from the Kino Site and wholesale sales of media products.

49.  The Code Red DVD License expired on August 14, 2018, and without authorization by VHP or RCI, WNO entered into a distribution agreement with Kino to continue to distribute the Kino Edition and sold finished goods to Ronin Flix and other retailers for the Ronin Flix Edition.

50.  Upon information and belief, the Ronin Flix Edition was replicated at the direction of WNO by CD Video Manufacturing, Inc. ("CD Video").

51.  Upon information and belief, the Kino Edition is being replicated at the direction of WNO and/or Kino by Vantiva, S.A. (f/k/a Technicolor, S.A) or its affiliate ("Vantiva").

52.  Upon information and belief, Kino contracted with defendants Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik to supply copies of the Kino

Edition for retail sale; Frolic Pictures contracted with defendants Amazon and Walmart to supply inventory copies of the Frolic Edition for retail sale; and Olsen contracted with defendant Diabolik and other retailers to supply inventory copies of the Kino Edition and Ronin Edition for retail sale.

53.  Upon information and belief, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik conduct business over the Internet and derive substantial revenue from interstate or international commerce sales of products and services.

54.  Ronin Flix knows or should have known that the Ronin Edition was not authorized by VPH or RCI. A simple request to WNO for a copy of the Code Red DVD License or other inquiry of WNO would have revealed that the Code Red DVD License had expired in August 2018, which should have been enough to deter Ronin Flix from release of the Ronin Flix Edition.

55.  Defendants Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik knows or should have known that the Kino Edition was not authorized by VPH or RCI. A simple request to WNO for a copy of the Code Red DVD License or other inquiry of WNO would have revealed that the Code Red DVD License had expired in August 2018, which should have been enough to deter them from the release of the Kino Edition.

56.  Had they done their due diligence on the Copyright and/or made an inquiry as to validity of the rights and/or requested and received a copy of the

Code Red DVD License, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik would know or should have known that RCI's principal place of business is the State of Florida and that any Copyright infringement was aimed at and likely cause harm in the State of Florida. The conduct of each of the defendants constitutes reckless disregard for or willful blindness to the rights of VPH and/or RCI in the Film.

57. During a routine inspection of Internet websites in July 2022, RCI discovered that the Kino Edition is being publicly displayed and/or distributed at https://www.amazon.com (the "Amazon Site"), at https://www.bestbuy.com (the "Best Buy Site"), at https://www.target.com (the "Target Site"), at https://www.walmart.com (the "Walmart Site"), at https://www.grindhousevideo.com (the "Grindhouse Site"), and at https://www.diabolikdvd.com (the "Diabolik Site"). This inspection further revealed that the Ronin Flix Edition is being publicly displayed while not for sale at the Ronin Flix Site. This inspection further revealed that the Frolic Edition is being publicly displayed and/or distributed at the Amazon Site and Walmart Site.

58. In August 2022, RCI and VPH citing to the Copyright gave written notice to WNO to cease and desist sales of the Ronin Flix Edition and the Kino Edition, demanded an accounting and return of materials (the "Code Red DVD Letter"). The Code Red DVD Letter was copied to Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik and Ronin Flix. WNO has not responded to the Code

Red DVD Letter.

**A.**   **<u>KINO</u>**

59.   The following image is an offer for sale of the Kino Edition on the Kino Site on or around July 2022. It is expected that the offer had been on the Kino Site since the January 2021 release date followed by postings on other websites as further described in the below paragraphs.



60.  In August 2022, RCI and VPH though counsel citing to the Copyright gave written notice to Kino to cease and desist and requested an accounting of sales and demand for damages.

61.  Subsequently, Kino removed the Kino Edition from the Kino Site, but has not provided an accounting.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

**B.** **AMAZON**

62. The following image is an offer for sale of the Kino Edition on the Amazon Site on or around July 2022.



63. The following image is an offer for sale of the Frolic Edition on the Amazon Site on or around July 2022.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

1



64.  Despite several subsequent letters, Amazon has failed to remove the Kino Edition as being offered for sale from the Amazon Site. The Frolic Edition is no longer being offered for sale on the Amazon Site as of the date of filing of this Complaint.

**C.**   **BEST BUY**

65.  The following image is an offer for sale of the Kino Edition on a Best Buy Site on or around July 2022.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

66.  In August 2022, RCI and VHP through counsel citing to the Copyright gave written notice to Best Buy to cease and desist and requested an accounting of sales and demand for damages.

67. Subsequently, Best Buy removed the Kino Edition from the Best Buy Site but has not provided an accounting.

**D.   <u>TARGET</u>**

68.  The following image is an offer for sale of the Kino Edition on a Target Site on or around July 2022.

1
2
3
4
5
6
7
8
9
10



11
12   69.  In August 2022, RCI and VHP through counsel citing to the Copyright

13  gave written notice to Target to cease and desist and requested an accounting of

14  sales and demand for damages.
15

16   70.  Subsequently, Target removed the Kino Edition from the Target Site,

17  but did not provide an accounting.

18  **E.    WALMART**

19

20   71.  The following image is an offer for sale of the Kino Edition on a

21  Walmart Site on or around July 2022.

22
23
24
25
26
27
28



72. As of July 2022, the Frolic Edition was being offered for sale on the Walmart Site.

73. In August 2022, RCI and VPH through counsel citing to the Copyright gave written notice to Walmart to cease and desist and requested an accounting of sales and demand for damages.

74. Subsequently, Walmart removed the Frolic Edition and Kino Edition from the Walmart Site but did not provide an accounting.

**F.   <u>GRINDHOUSE VIDEO</u>**

75. The following image is an offer for sale of the Kino Edition on a

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

Grindhouse Site on or around July 2022.

76. In August 2022, RCI and VHP through counsel citing to the Copyright gave written notice to Grindhouse to cease and desist and requested an accounting of sales and demand for damages.

77. Subsequently, Grindhouse removed the Kino Edition from the Grindhouse Site, but did not provide an accounting.

### G. **DIABOLIK**

78. The following image is an offer for sale of the Kino Edition on a Diabolik Site on or around July 2022.



79. In August 2022, RCI and VPH through counsel citing to the Copyright gave written notice to Diabolik to cease and desist and requested an accounting of sales and demand for damages.

80.  Subsequently, Diabolik removed the Kino Edition from the Diabolik Site, but did not provide an accounting.

## H.   RONIN FLIX

81.  The following image is of the Ronin Flix Edition on the Ronin Flix Site on or around July 2022. It is expected that the offer had been on the Ronin Flix Site absence an indication of being sold out since around May, 2019.



82.  In August 2022, RCI and VPH through counsel citing to the Copyright gave written notice to Ronin Flix to cease and desist and requested an accounting of sales and demand for damages.

83.  Subsequently, Ronin Flix removed the Ronix Flix Edition from the Ronin Flix Site and provided only an accounting

## FIRST CLAIM FOR RELIEF

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION

**Direct Copyright Infringement**

84. Plaintiff RCI alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

85. The Film, including the Ronin Flix Edition and the Kino Edition, constitutes copyrightable subject matter under the laws of the United States.

86. RCI has been and still is the owner of all right, title, and interest in and to the Copyright in the Film in accordance with Sections 408 through 410 of the Copyright Act and all other laws governing Copyright. RCI as assignee of VPH has the exclusive rights and privileges in and to the Copyright of the Film and any versions of the Film.

87. Neither VPH nor RCI authorized WNO's, Ronin Flix's, or Kino's distribution or any other exploitation of the Film.

88. Defendants Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik infringed RCI's copyrighted works by distributing the Film for retail sale without a valid license or authorization from VPH or RCI.

89. WNO's entering into agreements with Ronin Flix and Kino following the expiration of the Code Red DVD License constitutes Copyright infringement under 17 U.S.C., § 106 and §§ 501, *et seq.*

90. Defendants' Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik distribution of the Film violates 17

U.S.C., §§ 201 and 205 and constitutes Copyright infringement under 17 U.S.C., § 106 and §§ 501*, et seq.*

91.     WNO, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik, and Masters knew or should have known that the Film belonged to RCI, and they did not have permission to exploit the Film in any way or manner.

92.     WNO, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik, and Masters knew its actions constituted Copyright infringement.

93.     WNO's conduct was willful within the meaning of the Copyright Act; WNO is alleged to have  (i) ignored a clear and conspicuous Copyright notice on the Film and the Copyright Registration on file with the Register of Copyrights; (ii) ignored the expiration date of the Code Red DVD License;  (iii) contracted with Ronin Flix and Kino for distribution of the copyrighted Film; and (iv) contracted with CD Video and Vantiva for  replication of the copyrighted Film.

94.     Kino's conduct was willful within the meaning of the Copyright Act. Kino is alleged to have (i) ignored a clear and conspicuous Copyright notice on the Film and the Copyright Registration on file with the Register of Copyrights; (ii) failed to conduct due diligence which would have disclosed that WNO had no rights in or to the Film; (ii) contracted with WNO regarding distribution of the Kino Edition; (iii) contracted with Amazon, Best Buy, Target, Walmart,

Grindhouse and Diabolik for sale of the Kino Edition; and (iv) provided inventory of the Kino Edition for sale by Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik to the general public.

95.  Ronin Flix's conduct was willful within the meaning of the Copyright Act;  Ronin Flix is alleged to have  (i) ignored a clear and conspicuous Copyright notice on the Film and the Copyright Registration on file with the Register of Copyrights; (ii) failed to conduct due diligence which would have disclosed that WNO had no rights to the Film; and (iii) contracted with WNO to purchase the Ronix Flix Edition for resale to the general public.

96.  Each of Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik, and Masters conduct with regard to the Kino Edition was willful within the meaning of the Copyright Act.  Each of Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik, and Masters is alleged to have ignored a clear and conspicuous Copyright notice on the Film and the Copyright Registration on file with the Register of Copyrights; (ii) failed to conduct due diligence which would have disclosed that WNO had no rights to the Film; (iii) contracted with Kino for distribution of the Kino Edition; (iv) marketed and sold the Kino Edition to the general public.

97.  Each of Amazon and Walmart's conduct with regard to the Frolic Edition was willful within the meaning of the Copyright Act. Each of Amazon and Walmart are alleged to have  ignored a clear and conspicuous Copyright notice on

the Film and the Copyright Registration on file with the Register of Copyrights; (ii) failed to conduct due diligence which would have disclosed that Frolic Pictures had no rights to the Film; (iii) contracted with Frolic Pictures for distribution of the Frolic Edition; (iv) marketed and sold the Frolic Edition to the general public.

98.   As a result of its reckless disregard or willful blindness, WNO, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse, Diabolik, and Masters are liable to RCI for Copyright infringement pursuant to 17 U.S.C., § 501. RCI has suffered, and will continue to suffer, losses, including but not limited to dilution of the value of the Film, damage to RCI's business reputation, goodwill and exploitation of the Film.

99.   RCI is entitled to recover losses, which include actual damages and in addition any and all profits WNO, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik has made as a result of its wrongful conduct. 17 U.S.C. § 504(b). Alternatively, RCI is entitled to statutory damages under 17 U.S.C § 504(c).

100.   In addition, because each defendant's conduct was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

101.   RCI is entitled to recover its attorneys' fees and costs of litigation pursuant to 17 U.S.C. § 505.

### SECOND CLAIM FOR RELIEF

## Contributory Copyright Infringement

102. Plaintiff, RCI alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

103. WNO induced, caused and materially contributed to the infringing act of others by falsely and fraudulently claiming ownership rights, and encouraging, inducing, allowing and assisting others to reproduce and distribute the Ronin Flix Edition and Kino Edition.

104. WNO had knowledge of the infringing acts relating to the Ronin Flix Edition and Kino Edition.

105. The acts and conduct of WNO, as alleged above in this Complaint, constitute contributory Copyright infringement.

## THIRD CLAIM FOR RELIEF

### Conversion

106. Plaintiff, RCI alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

107. At all times herein mentioned, RCI was, and still is, the owner of the Film's copyright, all versions of the Film, and all other property interests.

108. RCI is informed and believes that WNO, Kino, and Frolic Pictures remain in possession of prints and/or negatives of the Film without permission.

109. As a direct and proximate result of WNO's conversion, RCI has been deprived of ownership over the Film, and other reproductions and distributions of

the Film, and is irreparably harmed.

## DEMAND FOR JURY TRIAL

110. Plaintiff, RCI hereby demands a trial by jury on any and all claims and issues triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RCI respectfully requests judgment as follows:

1.     Plaintiffs' actual damages, and all revenues and any additional profits of WNO, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik pursuant to 17 U.S.C. § 504(b), alternatively statutory damages pursuant to 17 U.S.C. § 504(c) or enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of Copyright in the Film.

2.     For an accounting of, and the imposition of constructive trust with respect to, all revenue of WNO, Frolic Pictures, Ronin Flix, Kino, Amazon, Best Buy, Target, Walmart, Grindhouse and Diabolik of any kind attributable to its infringement of Copyright in the Film.

3.     An order of impoundment pursuant to 17 U.S.C. § 503 impounding all prints and/or negatives for the Film and all infringing copies of the Film which are in the possession or control of the Estate of William N. Olsen, WJO, Ronin Flix, Frolic Pictures, and/or Kino.

4.     For attorneys' fees, litigation expenses and costs, payment of interest, and such other and further relief as the Court may deem just and proper.

Dated: January 3, 2023

/S/ Thomas R. Charboneau, Jr.

_____

Thomas R. Charboneau, Jr.
FL Bar No. 223890
1923 Hamman Drive
Troy, Michigan 48085
Phone: (248) 761.2334
Email: tcharblaw@gmail.com

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONVERSION