<div align="center">

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 9:23-cv-80008- KAM**

</div>

REDOAK COMMUNICATIONS, INC.,
a Florida Corporation,

      Plaintiff,

v.

Administrator of the Estate of WILLIAM N.
OLSEN, BETHANY VOTA, Personal Representative
of the Estate of WALTER Y. OLSEN,
AMC NETWORKS, INC.,
a Delaware Corporation,
IFC ENTERTAINMENT HOLDINGS LLC.,
a Delaware Limited Liability Company,
DIGITAL STORE, LLC.,
a Delaware Limited Liability Company,
ALL CHANNEL FILMS, INC.,
a California Corporation,
DAVID DeFALCO d/b/a DARK FORCE ENTERTAINMENT,
FROLIC PICTURES, LLC.,
a California Limited Liability Company,
JARED L. MASTERS, and
DOES 1 THRU 10, INCLUSIVE,

      Defendants.
_____/

<div align="center">

**DEFENDANTS, AMC NETWORKS, INC., IFC ENTERTAINMENT
HOLDINGS LLC., DIGITAL STORE, LLC., ALL CHANNEL FILMS,
INC., AND DAVID DEFALCO D/B/A DARK FORCE ENTERTAINMENT'S
<u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

</div>

      Defendants, AMC NETWORKS INC. ("AMC"), IFC ENTERTAINMENT HOLDINGS LLC. ("IFC"), DIGITAL STORE, LLC., ALL CHANNEL FILMS, INC., and DAVID DEFALCO (individually "DeFalco" and collectively, the "DeFalco Defendants,") by and through undersigned counsel, hereby file this Motion to Dismiss Plaintiff, REDOAK COMMUNICATIONS, INC.'s ("Plaintiff"), Second Amended Complaint (Ecf. 268, "SAC") with Prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In support thereof, Defendants state as follows:

## INTRODUCTION

This is an action for alleged copyright infringement and conversion brought by the alleged successor in ownership of a film. As to the DeFalco Defendants, the claim is based on allegations that the party granting rights to DeFalco exceeded the grant of a prior license agreement. Plaintiff's Second Amended Complaint ("SAC") makes new allegations of fact and law specifically directed at both DeFalco and the DeFalco Defendants collectively. Based on these new allegations the DeFalco Defendants submit this Motion to Dismiss the Second Amended Complaint with Prejudice ("Motion.")

The Court was clear in its Order Granting Motion to Dismiss and More Definite Statement ("Order") what was expected of Plaintiff in this pleading. (Ecf. 267). The Order acknowledges Plaintiff's admission that the First Amended Complaint was a shotgun pleading. The latest forty-seven (47) page epic SAC is even more scattered. The Court required the Plaintiff to provide the specific acts of each Defendant which support its allegations detailing which Defendant did what, with which set of agreements. The Court further required that the Plaintiff establish how each Defendant had knowledge of direct infringement and intentionally contributed to the direct infringement. (Ecf. 267, Pg. 6 & 7)

Not only has Plaintiff failed to comply with the Court's Order, but its new allegations have created more internal conflicts and ambiguities in its own pleading. Plaintiff is not, and cannot assert itself to be, the owner of the U.S. Copyright Registration, by its own allegations and exhibits, including a number of which appear to have been contrived to pursue this litigation in circumvention of NY corporate law, probate law and a duty of candor to this Court. As a result, the SAC must be dismissed at this time, with prejudice.

## ARGUMENT

I.	**The Court Should Dismiss This Action As An Improper Shotgun Pleading.**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009.) "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in meeting the standard required by Rule 8. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Id.* at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation t o provide the 'grounds of his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. 544, 555 (2007.)

"Factual allegations must be enough to raise a right to relief above the speculative level…" *Id.* at 555.  Courts may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the…law[] in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).)

In the instant case, Plaintiff's SAC fails to correct the deficiencies identified in the First Amended Complaint ("FAC.") Plaintiff's SAC uses the same generic boilerplate language which

it copies into different paragraphs. (SAC ¶72, 73, 74, 113, 120 and 125.)  Plaintiff fails to identify each Defendant's specific act or omission that supports any allegation of copyright infringement. Plaintiff fails to provide the Court with any specific information regarding what each Defendant did or didn't do, and who allegedly relied on what. Instead, Plaintiff's allegations are nothing more than "labels and conclusions," "naked assertions," and "a formulaic recitation of the elements of a cause of action." *Microsoft Corp. v. Guirguis*, No. 20-CV-24514, 2022 WL 1664181, at *2 (S.D. Fla. Mar. 30, 2022).

**II.     SAC Fails to Properly Allege Ownership of a Valid Copyright**

To succeed on a claim of copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020).  The direct copyright infringement claim in the SAC fails as it does not properly assert ownership of a valid copyright.  *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020).  Indeed, Plaintiff's own allegations and conflicting exhibits make it impossible for it to establish ownership of the copyright to the work at issue.  Given those conflicts, any amendment to the pleading would be futile dictating dismissal of this litigation with prejudice.  A chronological review of the conflicts and failures of the SAC to allege ownership of the subject copyright registration ("2007 Copyright Registration '311) over the forty-four (44) year history in Plaintiff's lawsuit follows.

   A.     1980:   Creation of Oakland and the Work

The SAC asserts that Oakland Productions Limited ("Oakland") was formed in 1980 in New York. (SAC ¶3)  The SAC fails to allege the identity of Oakland's shareholders at any time over the past forty-four (44) years.  According to New York Statutes shareholders are the owners of a corporation.  *Helfand v. Cohen*, 110 A.D.2d 751, 487 N.Y.S.2d 836 (App. Div. 1985)

Plaintiff alleges that the subject film ("Work") was created in 1980. (SAC ¶9, Ex. 3: 2007 Copyright Registration '311 "Registration") The SAC mentions no other creators nor any written agreements with the director or actors, including Vlado Hreljanovic ("Vlado"), the owner of Plaintiff or his father, Teodor Hreljanovic ("Doro") regarding the Work. (SAC ¶3) The SAC does not allege the identity of any owner of the Work, its embodiments or its intellectual property from its creation in 1980 through 2007. The SAC also fails to identify which, if any, of these producers or actors being involved with the Film/Work were employees of Oakland when the Work was created. Plaintiff merely asserts, without any supporting documentation, that on some unstated dates Doro was the President of Oakland. (SAC ¶3.)

The SAC alleges that Work was "directed" by Jeff Lieberman and was "planned, financed and produced" by Oakland. (SAC ¶2) The credits to a Code Red DVD release[1] licensed by Vlado Hreljanovic ("Vlado"), discussed later, list David Sheldon and Doro as Producers of the Work. (SAC Ex. 6B[2]). No ownership of the Film, Work or their embodiments are alleged from 1980 to 2007[3].

B. 1991: Dissolution of Oakland

On December 24, 1991, Oakland was administratively dissolved. (SAC ¶5.) The SAC makes no reference to ownership or use of the Work or the operation of Oakland from 1991 to 2007. The only reference in the SAC to any dissolution efforts by anyone allegedly connected to Oakland were not until August 2023, some forty-three (43) years after the Work was created, when Vlado's sister, Maja, executed the 2023 Bill of Sale discussed below. (SAC ¶5.) The SAC alleges that there have been *"authorized releases"* of the Work throughout the years (SAC ¶38) but fails

[1] See 2012 Code Red License for a DVD video release of the Work from Vlado Hreljanovic detailed below.
[2] The copy provided by Plaintiff is not fully legible. For ease of reference better copy of the same is attached hereto as ***Exhibit A.***
[3] See 2007 Copyright Registration '311 below.

to identify them as any releases authorized after December 24, 1991, which would violate New York law regarding dissolution of corporate assets as the dissolved company must proceed with wind up of its affairs, not continuation of business. See generally: N.Y. Bus. Corp. Law § 1005 (Consol., Lexis Advance through 2024 released Chapters 1-545**)

### C. 2005: Doro Passes

In May 2005, Doro died and, at some time prior to the filing of the SAC, Vlado's mother, Nives, passed as well. (Ecf. 268-1, Ex 2: 2007 Copyright Registration '311 and ¶3). The SAC makes no reference to Doro or Vlado's Mother owning any shares in Oakland or the Work or any probate proceedings for them regarding any interest they may have owned in Oakland or the Film.

### D. 2007: U.S. Copyright Registration '311

In October 2007, some two years after his father's death and twenty-seven (27) years after the creation of the Work, Vlado registered the Copyright of the Work *in his own name*. (Ecf. 268-1, Ex 2: Registration.) On the Registration Vlado lists Doro as "Producer" of the Work. Vlado lists himself as a "Work for Hire" and "Producer" as well, listing his address care of Juniper Pictures, Great Neck, NY. Finally, Vlado asserts that he is sole claimant due to an existing Written Agreement but does not elaborate on the parties, date or terms or attach a copy as an Exhibit to the SAC. Oakland is not mentioned in the registration, nor is "David Sheldon" whose name appears as "Producer" on the back of the Code Red DVD credits. (Ecf. 268-1, Ex 6B, "2012 Code Red DVD Cover"[4]). These omissions conflict with both the SAC allegations and the 2012 Code Red DVD Cover suggesting that the Registration is incomplete at best and fraudulent at worst. Plaintiff includes neither the alleged "Work for Hire" Agreement nor the written "Transfer Agreement" referenced in the Registration in the SAC nor makes any allegation related to those claimed rights

---

[4] See ***Exhibit A.***

transfers. Such documents, which would have to have been made by Doro during his lifetime and before Oakland's 1991 dissolution are essential to Plaintiff establishing any claim of ownership through Oakland in an enforceable U.S. copyright registration. The SAC fails to state a cause of action without them.

### E. 2012: Code Red License

In 2012 Vlado executed another document claiming a different company owned the rights to the Work. Some five years after the Registration, Vlado executed a document on behalf of a new company, called "*Red Oak Group, Inc.*" (a Delaware Corporation[5]) (the "2012 Code Red License") (Ecf. 268-1, Ex 6A.) In the 2012 Code Red License, Vlado represented that Red Oak Group, Inc. had the *"sole and exclusive license from Oakland Productions, Ltd."* for the rights in the Picture (i.e. the Work.) Vlado also listed his contact email as vphjuiper@hotmail.com and physical address in Boynton Beach, FL. Red Oak Group, Inc., specifically warranted that it had *all the rights* to grant all of the rights conveyed and the exercise of the rights would not infringe any copyright. The SAC fails to attach any sole and exclusive license from Oakland Productions, Ltd. to Red Oak Group, Inc. Nor does Plaintiff allege or attach exhibits showing Oakland obtained such rights to the Work in order to grant an exclusive license to Red Oak Group, Inc. Any such an exclusive license would require a writing. *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332 (S.D.N.Y. 2009) The 2012 Code Red License representation is in direct conflict with the ownership claim in the earlier Registration. The 2012 Code Red License from Red Oak Group, Inc. also squarely conflicts with the SAC alleging that "Plaintiff granted the license agreement" (SAC ¶39) when Vlado did not "merge" this entity into Plaintiff until midway through

---

[5] According to Plaintiff's Merger document, the subject of Defendants' Request for Judicial Notice, Red Oak Group, Inc. was a Delaware Corporation.

this litigation in 2023.[6]  The foregoing leaves the parties and the Court with one unmistakable conclusion: the Registration is fraudulent, the 2012 Code Red License is fraudulent, or both. Any of those conclusions require dismissal of the SAC with prejudice and sanctions. By his signature, Vlado is the moving force behind both of these documents and more to follow below.

F. 2022 – Vlado Assignment to Plaintiff

To make matters worse, in October 2022, Vlado registered a document with the U.S. Copyright Office apparently indicating he was *personally* assigning Copyrights in the Work to Plaintiff. (Ecf. 268-1, Exhibit 3: "2022 Assignment Registration").  The SAC fails to attach a copy of the actual 2022 Assignment itself.  The 2022 Assignment Registration conflicts with the 2012 Code Red License in which Vlado represented that Oakland was the owner of those copyrights and Red Oak Group, Inc. was the sole and exclusive licensee of the rights. The SAC makes it clear that Plaintiff claims its rights under the flawed 2022 Assignment Agreement. (SAC ¶89.) Without (1) the actual 2022 Assignment, (2) the alleged written agreement between Oakland and Red Oak Group, Inc., (3) allegations and written evidence of how Oakland, which had been dissolved for over fifteen (15) years somehow acquired the rights from Vlado (Claimant on the Registration) to enter into the alleged 2012 Code Red License, (4) the Work for Hire and Written Assignment agreements referenced in the Registration and (5) documents and allegations showing how Vlado somehow reacquired ownership from Oakland after 2012 in order for Vlado to be able to personally assign the Copyrights in the Work to Plaintiff, response to the SAC is impossible, and truly futile.

---

[6] See 2023 Litigation and Vlado's New Transfers below.

G.       2023 Litigation and Vlado's New Transfers

In January 2023, Vlado initiated this litigation for his new Florida company, Redoak Communications, Inc., as Plaintiff, claiming to be the owner of the Registration in the Work. (SAC ¶1) Plaintiff claims in the SAC that it gained rights by virtue of the unattached 2022 Assignment. (SAC ¶9)

After the initiation of this litigation, in August 2023, Vlado executed Articles of Merger for his Delaware Company, Red Oak Group, Inc., a/k/a Redoak Group, Inc. into Plaintiff.[7] SAC ¶39) The alleged merger apparently occurred some eleven (11) years *after* the 2012 Code Red License where Red Oak Group, Inc. claimed to have a sole and exclusive license from the long dissolved Oakland, the alleged owner of the Work in 2012 which evidences the fraudulent claim to ownership by Vlado, individually, in the Registration. (SAC ¶39) Vlado's claimed individual ownership in the 2022 conflicts with the 2012 Code Red License which states that Oakland, not Vlado, owned the Copyrights and the claim in 2012 by Oakland to be the owner of the rights (as mentioned above) conflicts with Vlado's claim in the Registration that he, personally, was the Copyright Claimant.

Even worse yet, during this litigation in August 2023, Vlado and his sister, Maja Guilino, concocted another conflicting document, a so called "2023 Bill of Sale." (Ecf. No. 243-1, Ex.1). The 2023 Bill of Sale, Exhibit 1 to the SAC, is suspiciously backdated some **thirty-two (32) years** to the exact date of dissolution of Oakland, December 24, 1991, a time when Doro was still alive and perhaps an owner of Oakland. (Ecf. 243-1, Ex. 1). Furthermore, no evidence or allegations are provided or contained in the SAC showing that Vlado or his sister Maja had any involvement

---

[7] At or about the time of filing this Motion the DeFalco Defendants intend to File a Request for Judicial Notice of the Records of The State of Florida, Division of Corporations identifying a true copy of the Articles of Merger submitted March 9, 2023.

with Oakland or were officers or shareholders in the Company while it was active (prior to December 24, 1991.)

The language of the 2023 Bill of Sale is extremely concerning. First, it purports to be the act of Oakland, a company dissolved some thirty-two (32) years earlier by a purported director from around 1980 bypassing creditors, shareholders and their estates.  Second, Vlado's sister clearly warrants to Vlado that as of 2023, Oakland *"has good title to said Motion Picture"* (i.e. the "Work") and that it is *"free of all claims."*  The 2023 Bill of Sale also claims that it transfers "all right title and interest" to the Motion Picture/Work to Vlado, ***personally!*** The 2023 Bill of Sale explicitly states in its Exhibit A thereto that the transfer includes *all copyrights* and licenses. The 2023 Bill of Sale, obviously manufactured for purposes of this litigation, squarely conflicts with the entirety of this litigation which claims Plaintiff, not Vlado, is the owner of the 2007 Registration. See (SAC Ex. 2), the 2012 Code Red License (SAC Ex. 6A), the referenced 2022 Assignment and the 2023 Merger.  Again, at least one, if not more of them, must be fraudulent given this square conflict.

Plaintiff alleges to have received an assignment from Vlado in 2022.  (SAC ¶ 9, 89, 131) However, the 2023 Bill of Sale was created in August 2023 and states that Oakland still owned the rights at that time.  The 2023 Bill of Sale also directly evidences that the Registration issued to Vlado as the individual copyright claimant was obtained through fraudulent representations to the Copyright Office by Vlado.  As evidenced by the 2023 Bill of Sale (a document actually provided by Plaintiff as part of the SAC) Vlado did not receive the rights to the Copyright until 2023 (assuming the long-dissolved Oakland, its shareholders and his sister were legally able to make such a transfer.)

Plaintiff alleges that *"in liquidation as allowed under NY law,"* Oakland, dissolved some thirty-two (32) years earlier, was permitted to assign rights to Valdo. (SAC ¶5) The SAC does not cite the relevant corporate or probate New York law, identify the shareholder owners of Oakland, how a 1980 director had authority to act some thirty two (32) years later without estate authority or in contradiction of the Registration, two other U.S. Copyright registrations for the same Work purportedly owned by John Carr, the 2012 Code Red License and 2022 Assignment. (SAC ¶8 and footnote 1) As well the SAC alleges that since Oakland was dissolved in December 1991 Vlado individually **held the Copyright Registration for the Film.** (SAC ¶8 & Ex. 2, 2007 Copyright Registration '311.) The SAC does not indicate what it means by the Registration was "held" or how that came to pass. (SAC ¶8) Additionally, if this allegation had any merit, which the DeFalco Defendants deny, then there shouldn't be a need for the 2023 Bill of Sale.

Despite all of these conflicts and ambiguities and Plaintiff's failures to attach any supporting documents or agreements to the SAC which would establish proper ownership and standing by Plaintiff Vlado continues with this unwarranted litigation. (SAC ¶1)
Plaintiff has been given more than sufficient opportunities by the Court to attach chain of title evidence to an amended pleading that somehow, accounts for all of the inconsistencies and conflicts contained in the SAC regarding ownership of the copyrighted Work. Plaintiff has not complied, nor can Plaintiff do so and has responded with apparently fraudulent documents. At this point, the Court should dismiss this lawsuit with prejudice.

### III.   SAC Absence of Due Diligence Claim against DeFalco Fails

The allegations of the SAC regarding due diligence for the DeFalco Defendants are cut and paste, boilerplate repetitions of the DeFalco allegations and one another. (SAC ¶ 72,73, 74, 113, 114, 116, 119, 120, 122, 125, 126, 128) The allegations also conflict with each other and negate

the claim that DeFalco did not conduct due diligence on the license for the Work from William N. Olsen ("WNO.")

Plaintiff alleges that WNO and his brother Walter Y. Olsen ("WYO") were both engaged in the movie business having distributed numerous titles on a nationwide, if not worldwide, basis in a joint enterprise in film licensing, production manufacturing and distribution. (SAC ¶43.) The SAC further alleges that WNO relied upon DeFalco to assist him with personal and business decisions. (SAC ¶25.)

Despite the above and without any further facts, the SAC alleges that DeFalco knew or should have known that distribution rights (from WNO) were not authorized by Vlado or Plaintiff. (SAC ¶72) It further alleges that DeFalco knew or should have known that the Work belonged to Plaintiff and that he did not have permission to grant licenses and that such actions constituted direct Copyright Infringement. (SAC ¶113) The SAC does not explain how DeFalco knew about such direct copyright infringement and how he knew it, nor why the alleged rights would belong to both Vlado and Plaintiff, interchangeably.

The SAC then goes on to first claim that DeFalco failed to conduct due diligence which would have disclosed that WNO had no rights to the Work and that such alleged failure was a reckless disregard for or willful blindness to the rights of *Vlado or Plaintiff* in the Work. (SAC ¶114) Plaintiff and Vlado use themselves interchangeably as owners of the Work and the Copyright in the SAC. However, they are separate entities and if Plaintiff is alleging that both Vlado and the Plaintiff had rights in the Copyright, then further ambiguities are created with all of Plaintiff's above referenced allegations. If so and as such, the SAC should also be dismissed for failure to name indispensable party, namely Vlado as Co-Plaintiff.

Now Plaintiff claims that the conduct of DeFalco was both negligent (failure to conduct adequate due diligence -SAC ¶72, 80 & 113) and acted intentional (knowing infringement -SAC ¶114 & 116) However, the SAC fails to address either with any specificity required in the Order, certainly not the knowing and intentional allegations. Astonishingly, Plaintiff then contradicts its failure to conduct due diligence argument with its admission that Dark Force (DeFalco) had inquired of WNO who advised that VPH had granted an oral extension of the Code Red License. (SAC ¶80) Given Plaintiff's admitted business and personal relationship with worldwide film distributor WNO with whom DeFalco inquired as to the specific alleged rights, Plaintiff negates its own claim. (SAC ¶25 & 43) Clearly, the SAC conflicts with itself and, taking the Plaintiff's admission as true, it cannot amend the SAC to claim that DeFalco did not conduct any due diligence.

## IV.     SAC - Contributory Infringement Claim Fails

All liability for Defendants AMC Networks, Inc., IFC Entertainment Holdings, LLC., Digital Store, LLC. and All Channel Films, Inc., ("All Channel Defendants") is based on Plaintiff's allegation that DeFalco did not perform initial due diligence. (SAC ¶68 & 69) The allegations are, once again, cookie cutter repetitions of the DeFalco bare allegations and no further facts are alleged. (SAC ¶s 72, 73 & 74)  In each of those allegations Plaintiff repeats the same generic language about each DeFalco Defendant: each "knew or should have known that distribution rights were not authorized by Vlado or Plaintiff."  Again, Plaintiff offers no allegations required by the Order to explain this claim whose factual basis would be different for each Defendant.  All of Plaintiff's claims for punitive damages, attorneys' fees, etc. are based upon these same flawed allegations.  Importantly, having now admitted that DeFalco has conducted a due diligence inquiry into the legal basis for the subject licenses, and in light of the

false documents relied upon by Vlado and Plaintiff, further amendment would be futile.

**V.       SAC Conversion Claim against DeFalco Fails**

To state a cause of action for conversion, Plaintiff must allege the following elements: (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *Nutradose Labs, LLC v. Bio Dose Pharma*, LLC, 710 F. Supp. 3d 1200, 1231 (S.D. Fla. 2024); *Fairmarkit, Inc. v. Whaley*, No. 3:22-CV-5067 TKW-HTC, 2023 WL 2924462, at *2 (N.D. Fla. Feb. 6, 2023). Before a conversion can occur, "a person who has a right to possession of property demands its return and the demand is not or cannot be met." *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc*., 481 So. 2d 501, 503 (Fla. Dist. Ct. App. 1985). That stated, "a demand and refusal are unnecessary where it would be futile and the act preventing a return results in the depriving of possession and, thus, equates to a conversion." *Id*.

The SAC alleges that DeFalco made a representation that Dark Force Entertainment "will be taking into its possession" original film materials on a "forthcoming" basis. (SAC ¶167). The SAC even alleges that DeFalco's counsel (the undersigned) confirmed in writing that DeFalco was not in possession of that property. (SAC ¶ 167, Ex.25) The SAC does not allege that DeFalco is in possession of such personal property or has asserted an act of dominion over them. To the contrary, Plaintiff describes possession in the future term of "forthcoming." While that issue is dispositive alone, the SAC also fails to allege who has owned or controlled such original film materials for the last forty-four (44) years. The SAC sounds in terms of the intellectual property and alleged use outside the 2012 Code Red License, not the personal property rights in the physical materials. Notwithstanding all of the forgoing Plaintiff and Vlado have pushed forward with this claim. Based on the foregoing, the Plaintiff fails to state a cause of action for conversion and Count Three must be dismissed as to DeFalco as well.

## CONCLUSION

For the reasons set forth above, Defendants, AMC Networks, Inc., IFC Entertainment Holdings, LLC., Digital Store, LLC. and All Channel Films, Inc. and David DeFalco, respectfully move this Court to enter an Order dismissing Plaintiff, REDOAK COMMUNICATIONS, INC.'S, Second Amended Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such further relief as this Court may deem proper.

Dated: December 10, 2024.

Respectfully submitted,

**BRADLEY LEGAL GROUP, P.A.**
Attorneys for Defendants
AMC NETWORKS, INC., IFC
ENTERTAINMENT HOLDINGS LLC.,
DIGITAL STORE, LLC., ALL CHANNEL
FILMS, INC., and DAVID DeFALCO
(*The DeFalco Defendants*)
15 Northeast 13th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 523-6160
Email: jb@bradlegal.com

By: _____/s/_____
John F. Bradley, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 10, 2024, I have filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on Plaintiff, Redoak Communications, Inc.

By:  /s/ John F. Bradley/
John F. Bradley, Esq.